IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01180-PAB

SHERYL Y. CHARLES,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

      This matter comes before the Court on plaintiff Sheryl Y. Charles' complaint [Docket No. 1], filed on May 22, 2009.  Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying her claim for disability insurance benefits and supplemental security income.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]  For the following reasons, the Court will affirm the Commissioner's decision.

## I.  BACKGROUND

      Ms. Charles applied for disability benefits on November 25, 2002, alleging that she was unable to work due to disability beginning on February 19, 2001.  Ms. Charles' claim was initially denied on January 23, 2003.  An Administrative Law Judge ("ALJ")

---

[1]Plaintiff requests oral argument.  *See* Joint Case Management Plan [Docket No. 7] at 3, ¶ 9.  The Court, however, concludes that the appeal has been fully briefed and can be resolved based on the parties' filings.

held a hearing on November 22, 2004.  Plaintiff's date of last insured status was March

31, 2004.  By decision dated September 15, 2005, the ALJ found that plaintiff was not

disabled as of March 31, 2004, the date of her last insured status.  Plaintiff appealed

that denial to the Appeals Council of the Social Security Administration.  The Appeals

Council reversed and remanded the matter to the ALJ for consideration of additional

medical evidence received after the hearing and to provide plaintiff, who was

unrepresented at the hearing, the opportunity to comment on that additional evidence.

*See* R. at 54.  The ALJ held a hearing on June 18, 2007, during which plaintiff was

represented by counsel.

In a decision dated July 18, 2007, the ALJ found that "claimant had the following

severe impairments: bilateral carpal tunnel syndrome, status-post release, and right

trigger thumb."  R. at 24 (citing 20 C.F.R. § 404.1520(c)).  The ALJ concluded, however,

that plaintiff's impairments, alone or in combination, did not meet one of the listed

impairments in the regulations, *see* R. at 25, and that plaintiff retained the residual

functional capacity ("RFC") to

> work with the following limitations: lift and carry 10 pounds occasionally and
> frequently; push and pull 20 pounds with the upper extremities; occasional
> handling, fingering, and feeling on the left, and frequent handling, fingering,
> and feeling on the right.

R. at 25.  Based upon these findings, the ALJ found that Ms. Charles could perform

jobs that exist in significant numbers in the national economy, *see* R. at 27, and,

therefore, that Ms. Charles was not disabled during the relevant time periods.  *See* R. at

28.  On April 17, 2009, the Appeals Council denied plaintiff's request for review, making

the ALJ's decision the final decision of the Commissioner.  *See* R. at 8-11.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

(1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## C. The ALJ's Decision

### 1. Assessment of Impairments

Ms. Charles argues that the ALJ did not properly consider all of her medically determinable impairments.  *See* Docket No. 8 at 17.  More specifically, plaintiff contends that the ALJ should have found at step two that she had severe back and neck pain with headaches and that she had a severe mental impairment prior to March 2004.  Furthermore, Ms. Charles argues that the ALJ did not consider the combined effect of all of her impairments, whether severe or non-severe, at step four.

To constitute an impairment, the alleged condition "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.  At step two, a claimant must show that regardless of her age, education, and RFC, there exists more than the mere presence of a condition or ailment, or combination thereof, that meets the duration requirement of the regulations; however, she need only make a "de minimis" showing of such.  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997);

*see also* 20 C.F.R. § 404.1520(a)(4)(ii).  The Tenth Circuit has described this standard by explaining that "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial gainful activity."  *Hinkle*, 132 F.3d at 1352.[2]

However, a determination of whether an impairment is "severe" at step two is somewhat different than the determination that occurs during the RFC calculation.  Step two is essentially a threshold check against non-meritorious claims of disability.  *See Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining that at step two "the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities").  Consequently, when an ALJ finds that a claimant has one or more severe impairments, but erroneously fails to list others, that error may have little independent impact on the ultimate disability determination.  In fact, § 404.1520, which describes the five-step process, does not contemplate a finding of disability at step two.  20 C.F.R. §

---

[2]"Basic work activities . . . mean the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).  According to the regulations, examples of "basic work activities" include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).

404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").   Rather, an ALJ must consider all of a claimant's impairments and limitations, even those that are not severe, at step four.  *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545."); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

The Court finds that substantial evidence supports the ALJ's conclusion that any residual back and neck pain with headaches stemming from a 2002 car accident did not constitute a "severe" impairment, if an impairment at all.  Plaintiff does not cite any specific opinions, findings, or test results that support the conclusion that she suffered any limitations lasting more than a few months as a result of the accident.  Instead, she cites to many pages in the record that she conclusorily asserts support such a finding.  First, many of those pages are irrelevant on their face, as they relate to treatment she received prior to the onset of the back and neck pain caused by the 2002 car accident.  And, as the ALJ concluded, there was no sign of a permanent impairment or the imposition of any "exertional, postural, or environmental restrictions related to [plaintiff's]

7

neck and back complaints."  R. at 24; *see* R. at 263 (Dr. Fall on June 5, 2002: "She is

doing much better regarding her neck . . . .  In my opinion, Ms. Charles is at maximum

medical improvement regarding the injuries sustained in the automobile accident with

no signs of permanent impairment.").  Therefore, the ALJ's conclusion at step two finds

more than sufficient support in the record.

As for the analysis at step four, the ALJ was required to consider "[a]ll medically

determinable impairments," *Mushero v. Astrue,* 384 F. App'x 693, 695 (10th Cir. 2010)

(emphasis omitted), which includes, as the ALJ recognized, "impairments that are not

severe."  R. at 22 (citing 20 C.F.R. § 404.1545(e); Social Security Ruling 96-8p).  But

the ALJ's conclusion at step two regarding the head and neck pain was, essentially,

that plaintiff recovered and that, for purposes of a disability assessment, the condition

was not medically determinable, i.e., it did not "result from anatomical, physiological, or

psychological abnormalities which can be shown by medically acceptable clinical and

laboratory diagnostic techniques."  20 C.F.R. § 404.1508 ("A physical or mental

impairment must be established by medical evidence consisting of signs, symptoms,

and laboratory findings, not only by [a claimant's] statement of symptoms.").  In other

words, the ALJ determined that there was no evidence of any limitation caused by any

head or neck pain.  Plaintiff fails to explain how the ALJ erred in not repeating that

conclusion at step four.  Even assuming that the ALJ's failure to reiterate his step two

findings at step four did constitute error, the Court finds it to be harmless.  *Cf. Allen v.*

*Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("[T]his court has held that certain

technical errors were 'minor enough not to undermine confidence in the determination

of th[e] case,' and that an 'ALJ's conduct, although improper, d[id] not require reversal'

because the procedural impropriety involved had not 'altered the evidence before the ALJ.'" (citations omitted)).

The Court also finds that the ALJ did not commit error in considering plaintiff's mental impairment at steps two and four.  The ALJ's conclusion that plaintiff did not suffer from a severe mental impairment prior to March 2004 is supported by substantial evidence.  The ALJ described the opinion of Dr. Robert Pelc, a medical examiner, who concluded that, although plaintiff's medical records indicated the presence of depressive and pain disorders in June 2002, "the medical evidence was insufficient to establish any limitations relating to these disorders prior to the claimant's date last insured," which is March 31, 2004.  R. at 24.[3]  At the hearing, plaintiff requested that the record remain open to permit her to submit additional medical records that she argues would have undermined the ALJ's reliance on Dr. Pelc.  Although plaintiff is correct that "[d]isability hearings are nonadversarial" and that the "ALJ has a duty 'to ensure that an adequate record is developed,'"  *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007), plaintiff still bears an independent responsibility of submitting evidence for the ALJ's review and showing good cause for failing to do so.  *See* 42 U.S.C. § 405(g); *Wooding v. Commissioner of Social Security*, 2010 WL 4261268, at *6 (W.D. Va. Oct.

---

[3]Evidence regarding plaintiff's mental impairments supports the conclusion that, in the latter months of 2004 and into 2005, plaintiff's mental condition deteriorated.  For example, plaintiff claims the step two error was compounded by the ALJ's failure to address the opinion of Dr. Gilbert Westfall, a psychologist.  *See* R. at 400-06.  Dr. Westfall examined plaintiff on April 6, 2005, more than a year after plaintiff's date of last insured.  He noted her "deteriorating psychiatric condition in early 2005," R. at 403, and discussed plaintiff's admission to a psychiatric hospital in November 2004.  *See* R. at 402.  Dr. Westfall, however, offered no opinion on plaintiff's condition during the relevant period, i.e., prior to March 31, 2004.

29, 2010) ("Not only could Plaintiff have done her due diligence and obtained her evidence prior to the hearing, the law requires her to do just that, and provide good cause if she did not." (citing 42 U.S.C. § 405(g)).  Plaintiff offers no explanation for failing to submit these records earlier in a case that was initiated in November of 2002.  *See* R. at 20 ("[T]he claimant has been represented by [counsel] since around September 2005.").  Therefore, there is no basis to remand on this ground.[4]

Furthermore, the additional evidence upon which plaintiff relies is consistent with the evidence reviewed by Dr. Pelc.  *See Johnson v. Apfel*, 229 F.3d 1163 (unpublished table opinion), 2000 WL 1346214, at *2 (10th Cir. 2000) ("To warrant a § 405(g) remand, 'we normally must determine that the new evidence would have changed the [Commissioner's] decision had it been before him.'" (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991)).  Plaintiff points to medical records from Dr. Cynthia Johnsrud dated August 2001, *see* R. at 934-36, and from Dr. Kathy F. McCranie dated July 2002.  *See* R. at 923.  Plaintiff fails to identify, and the Court has been unable to determine, which aspect of Dr. Johnsrud's report upon which plaintiff is relying.  As for Dr. McCranie, she reports that plaintiff "showed impairment in areas of social functioning, concentration, memory, and adaption to stress, which equals a two percent overall psychiatric permanent impairment rating."  R. at 23.  Plaintiff cites nothing to indicate that a two percent psychiatric impairment rating would support a finding of severe impairment at step two.

---

[4]Moreover, the Appeals Council included the additional evidence in the record before it on review of the ALJ's decision and concluded that it did "not provide a basis for changing the Administrative Law Judge's decision."  R. at 9.

In any event, as noted above, any error at step two may have little effect on the ALJ's ultimate determination.  Here, the ALJ included depression in the list of conditions to be considered at step four.  *See* R. at 25 ("The claimant alleges an inability to work, prior to March 31, 2004, due to carpal tunnel syndrome, problems with her right trigger thumb, and depression.").  R. at 25.  He cited his findings at step two and also addressed the opinion of Dr. Anne G. Steinberg, an examining psychologist, who "noted that the claimant's subjective pain reporting 'may be unreliable'" and diagnosed plaintiff with "'compensation neurosis'" which is a disorder where "individuals produce neurotic symptoms based on a belief that an illness may increase the chances of receiving some type of compensation."  R. at 25.  The Court finds no reversible error in the ALJ's analysis on this score.

## 2.  *Determination of Residual Functional Capacity*

Plaintiff also contends that the ALJ incorrectly determined her RFC at step four by failing to properly weigh the medical opinions in the record.  Plaintiff is correct that the ALJ did not specifically cite Dr. Allison Fall's imposition of certain restrictions in an August 8, 2001 treatment note.  Plaintiff, however, does not argue that those restrictions, i.e., that "she should have a 10-minute break for every hour of repetitive activity on the right" and "no repetitive activity" on the left, R. at 271, were inconsistent with the occupations identified at step five, *see* R. at 28, or were more restrictive than the RFC reached by the ALJ.  *See* R. at 25 (restricting plaintiff to lifting 10 pounds occasionally and frequently, pushing and pulling 20 pounds with the upper extremities, and "occasional handling, fingering, and feeling on the left, and frequent handling, fingering, and feeling on the right").  Furthermore, the ALJ did discuss those restrictions

as recounted by Ms. Charles, *see* R. at 26, in a portion of the decision where he found this restriction and the activities of her daily living were inconsistent with her claimed level of impairment. *See* R. at 26.

The ALJ also discussed the opinion of Dr. McCranie, to whom Ms. Charles was referred by Dr. Fall. The ALJ did not give Dr. McCranie's opinion controlling weight because the ALJ concluded that Dr. McCranie did not adequately account for certain reservations expressed by a therapist whose opinion formed the basis for his findings. *See* R. at 26. The ALJ, however, did incorporate most of the limitations imposed by Dr. McCranie into plaintiff's RFC. The Court is satisfied that the ALJ adequately considered the relevant factors in assessing the appropriate weight to give this treating source opinion.[5] *See* 20 C.F.R. §§ 404.1527 and 416.927.

### 3. Credibility Assessment

As for the ALJ's credibility determination, the Court finds that the ALJ's decision reflects a consideration of "all of the available evidence." 20 C.F.R. § 404.1529(c)(1). He considered "the medical opinions of [Ms. Charles'] treating source and other medical opinions" and evaluated her "daily activities." 20 C.F.R. § 404.1529(c)(1) & (3)(i). The ALJ appropriately determined "whether there [we]re any inconsistencies in the evidence and the extent to which there [we]re any conflicts between [Ms. Charles'] statements and the rest of the evidence, including [her] history, the signs and laboratory findings, and statements by [her] treating or nontreating source or other persons about how [her]

_____

[5]The Court also finds that the ALJ's reasons for not giving great weight to the opinion of Dr. Edward Manring, who conducted a consultative examination of plaintiff on July 6, 2004, *see* R. at 300, are adequately supported by the record. *See* 20 C.F.R. § 416.927(f)(2)(ii).

symptoms affect[ed her]." 20 C.F.R. § 404.1529(c)(4). Furthermore, the ALJ noted that a therapist assessing plaintiff's functional capacity noted there might be questions regarding the reliability of plaintiff's "subjective reports of pain/limitation," and, while not attributing intent to plaintiff's performance, found that plaintiff "can do more . . . than she currently states or perceives." R. at 228. The ALJ also appropriately cited Dr. Steinberg's opinion that Ms. Charles' reports of pain "may be unreliable." R. at 211.

In essence, plaintiff's arguments regarding the ALJ's credibility determination – as well as his weighing of medical evidence – turn on her contention that the evidence could support a different conclusion. That, however, is not the relevant standard of review on appeal. As noted above, that a district court might have reached a different result is not a basis for reversal absent a showing that substantial evidence does not support the ALJ's decision. *See Ellison*, 929 F.2d at 536.

### 4. *Step Five Analysis*

Finally, plaintiff argues that the ALJ did not engage in the proper analysis at step five of the sequential evaluation process because his hypothetical question for the vocational expert was invalid because of errors she argues the ALJ made at earlier steps. *See* Docket No. 8 at 23, 28. The Court has already addressed and rejected those objections to the ALJ's analysis and conclusions. Plaintiff further argues that "two of the three representative occupations do not have a significant number of jobs in the national economy." Docket No. 8 at 29. The Court need not address whether those two jobs exist in significant numbers in the national economy, seeing as plaintiff does not argue that the third occupation, with 6,000 jobs available in Colorado and 279,000

jobs available nationally, fails to cross the threshold of a "significant number."[6]

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the administrative law judge's July 18, 2007 decision is

AFFIRMED.  It is further

**ORDERED** that judgment shall enter in favor of the Commissioner and against

plaintiff.


DATED December 29, 2010.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[6]For the first time in her reply brief, plaintiff raises the argument that the number of relevant jobs likely decreased between the vocational expert's testimony during the first hearing in 2004 and the ALJ's decision in 2007. "This court does not ordinarily review issues raised for the first time in a reply brief."  *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000); *see Nichols v. Commissioner of Social Sec. Admin.*, 260 F. Supp. 2d 1057, 1077 (D. Kan. 2003).  Plaintiff identifies no persuasive reason for the Court to reach this additional argument in this case.